**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| ALEXANDRA CLAIR, et al., | ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 16-cv-2263-SHL-dkv |
| BANK OF AMERICA, N.A., et al., | ) ) | |
| Defendants. | ) ) | |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION**

Before the Court is the Chief Magistrate Judge's Amended Report and Recommendation

for *Sua Sponte* Dismissal. (ECF No. 8.)  *Pro se* Plaintiff Alexandra Clair filed a Complaint

against thirty-four Defendants, alleging claims under the Racketeer Influences and Corrupt

Organization Act ("RICO").  (ECF No. 1.)  In the Report and Recommendation ("R&R"), the

Chief Magistrate Judge recommended dismissing Ms. Clair's case as untimely or, in the

alternative, for failure to state a claim.  (ECF No. 8 at 1.)  When Ms. Clair failed to object timely

to the Chief Magistrate Judge's Report and Recommendation, this Court entered an Order

Adopting the Report and Recommendation on July 14, 2016.  (ECF No. 9.)  After Ms. Clair

notified the Court that she was not receiving any filings from the docket, the Court granted her

Motion to Alter the Judgment, to provide her an opportunity to file objections to the R&R.  (ECF

No. 12.)  Ms. Clair then filed her Objections and accompanying exhibits on August 2, 2016.

(ECF Nos. 14-17.)[1]

---

[1] In her objection, Ms. Clair requests that she be assigned an attorney.  In determining whether
the exceptional circumstances exist to justify the appointment of counsel in civil cases, the Sixth
Circuit Court of Appeals has instructed district courts to look at the type of case, the merit of the
claims and the ability of the litigant to represent themselves.  See Lavado v. Keohane, 992 F.2d

**STATEMENT OF THE CASE**

I.    <u>Factual Allegations</u>

The following recitation of the facts is taken from the Original Complaint,[2] as well as the

exhibits attached thereto.  This lawsuit focuses on allegations of a number of conspiracies Ms.

Clair claims have obstructed her access to apply for a federal program, the Home Affordable

Modification Program ("HAMP"), ultimately leading to the loss of her home.  (Objection at 1,

ECF No. 14.)  The story begins in 2005, when Ms. Clair and her former husband took out a loan

with Countrywide Home Loans, secured by a Deed of Trust on property located at 65 Pinehurst

Drive, Oakland, Tennessee (the "Property").  (Compl. ¶ 43, ECF No. 1.)  In July 2011, MERS

transferred the Deed of Trust to the Bank of New York Mellon.  (<u>Id.</u> at ¶¶ 98-104.)  At some

point, Bank of America, N.A. ("BANA") was assigned the Deed of Trust, although it is not clear

from the Complaint when this occurred.  Clair's former husband, Brett Stancil, quitclaimed the

Property to Ms. Clair in compliance with their divorce agreement on December 21, 2011.

(Objection 7, ECF No. 14.)  Subsequently, at some point in March 2012, Ms. Clair was told that

she was being evicted from the Property.  (<u>Id.</u> at ¶ 192(g).)  She alleges that she received notice

by a letter that she had to vacate the Property on April 3, 2012, and she ultimately left the

Property on April 25, 2012.  (<u>See</u> Objection Ex. 51, ECF 51-11; Objection 6, ECF No. 14.)

Between 2011 and 2012, Ms. Clair alleges that, in total, six different predicate acts of

fraud were committed by the thirty-four named Defendants: "[t]he HAMP Fraud Scheme, the In-

---

601, 606 (6th Cir. 1993).  Because Ms. Clair's claims lack merit, the Court **DENIES** the request
for appointment of counsel.

[2] Ms. Clair requested in the Objections that she be permitted to file an amended Complaint, and
requested 21 days to file.  (ECF No. 14 at 20.)  Subsequently, on August 23, 2016, Ms. Clair
filed an Amended Complaint.  (ECF No. 15.)  Given the lenient pleading standards afforded to
*pro se* litigants, her Amended Complaint will be reviewed following the entry of this Order, so
that any claims not addressed by this Order may be evaluated.

House Modification Loan Scheme, the Cooperative Short Sale Confidence Scheme, Illegal Eviction Fraud Scheme, the FHA Fraud Scheme and the Cover-Up and Containment Phase of the Fraud Scheme." (Objection 13, ECF No. 14.) Ms. Clair alleges that each of these schemes were coordinated fraudulent efforts against her, leading to specific injuries, including the denial of a HAMP loan modification, her loss of the equity invested in the Property, her loss of the opportunity to sell the Property, and, ultimately, her loss of the Property itself. (Id. at 4.)

As part of the "HAMP Fraud Scheme," Ms. Clair alleges that BANA engaged in fraudulent schemes, including that BANA acquired her financial documents via the HAMP application with no intention to review these documents. (Objection 10, ECF No. 14.) Ms. Clair alleges that she applied for a modification through HAMP and was rejected on January 13, 2012, but that she was intentionally not told of her rejection until after the 30-day period to request a review expired, sometime after February 10, 2012. (Id. at 10.) As part of the "In-House Loan Modification Scheme," Ms. Clair alleges that BANA's records showed a "Certificate of Abandonment" that Ms. Clair was no longer living at the Property so that BANA could fraudulently list the Property for sale. (Id. at 3, 18.)

Ms. Clair also alleges, as part of "the Cooperative Short Sale Confidence Scheme," that BANA intentionally led her to delay filing bankruptcy by proposing a program for seniors similar to a short sale that was non-existent. (Id. at 2-3.) Subsequently, as part of "the "Illegal Eviction Fraud Scheme," Ms. Clair alleges that she was "forced from her home under false pretense and threats on 4/25/2012." (Id. at 8) She alleges that she was told that she was evicted by a Fayette County, Tennessee Judge, but that no such legal proceeding existed. (Id.) Ms. Clair attached to her objections an unsigned "Move Out Agreement" indicating that a representative from BANA told her that they were entitled to engage in eviction proceedings, but were offering

Ms. Clair a sum of $2,000 as a settlement for her to re-locate without eviction. (Objection Ex. 50, ECF No. 15-10.) Ms. Clair indicates that she filed a lawsuit in state court related to the fraudulent eviction, but withdrew that lawsuit after manipulation by counsel that was "in service to the Criminal Enterprise cohort." (Objection 10-11, ECF No. 14.)

Within this same time frame, Ms. Clair alleges that Defendant Max Jones, a Certified Public Accountant, volunteered to assist her with her taxes in a conspiracy to disclose Ms. Clair's personal financial data and loan information on the subject Property to persons associated with Keller Williams Realty. (Id. at 16-17.) She alleges that Defendants Lennie Faye Kelley and Charles L. Kelley, along with Defendant Jones and Defendants Vernon and Sherry Boyd, operated in a criminal enterprise to acquire her property and transfer it while concealing the parties involved in the transactions and without placing the Property for public sale. (Id. at 17.) She alleges that Defendants engaged in a criminal enterprise, a "Property Flip-Equity Skimming Scheme." (Id. at 8.) Ms. Clair alleges that the scheme included fraudulent appraisals, differing sale prices, differing seller proceeds and the intentional withholding of the filing of public records related to the Property by these Defendants. (Id. at 12.) Ms. Clair alleges that all of the activity related to the Property Flip Scheme was in service to a larger "FHA Fraud Scheme" by certain Defendants that resulted in an FHA insured loan on the Property by Evolve Bank & Trust on August 20, 2012. (Id. at 14.)

Ms. Clair also asserts claims against prior attorneys who represented her at different points in her state-court lawsuit, including Webb Brewer and Kathryn Maceri. She avers that they each colluded as part of "the Cover-Up and Containment Phase of the Fraud Scheme" to give her intentionally false legal advice as a part of the larger criminal enterprise so that she would ultimately drop her lawsuit. (Id. at 11.)

Finally, Ms. Clair purports to bring claims on behalf of the United States Department of Treasury, the United States Department of Housing and Urban Development and Money Management International for the fraud against them. (Compl. ¶ 5, ECF No. 1.) She alleges that these parties "were all defrauded per fraudulent filings and corrupt patterns of behavior in the exercise and concealment of Theft by Deception [by Defendants]." (Id.)

## II.    Procedural Posture

Ms. Clair filed a *pro se* Complaint in this Court on April 20, 2016, asserting civil RICO claims under 18 U.S.C. §§ 1961-68. (Compl., ECF No. 1.) On May 31, 2016, the Chief Magistrate Judge issued a Report and Recommendation, recommending *sua sponte* that Ms. Clair's claims be dismissed because they are time-barred, or, in the alternative, because they fail to state a claim. (ECF No. 7.) On June 27, 2016, the Chief Magistrate Judge amended the Report and Recommendation to add a notice to Ms. Clair that objections were due by August 11, 2016. (ECF No. 8.) This Court initially adopted the Report and Recommendation on July 14, 2016, after Ms. Clair failed to object to the first issuance of the R&R. (ECF No. 9.) On July 18, 2016, Ms. Clair notified the Court that she failed to receive notice of electronic filing in the case and requested that the Court alter the judgment to allow her to file objections. (ECF No. 11.) The Court granted Ms. Clair's Motion to Alter Judgment on July 19, 2016, to allow her time file objections. (ECF No. 12.) Ms. Clair then filed a timely objection on August 2, 2016. (ECF No. 14.) She also filed 177 exhibits along with her objections. (ECF Nos. 14-17.)

Although Ms. Clair's filing is difficult to decipher, the Court believes she has lodged two separate objections to the Report and Recommendation: first, she objects to the Report and Recommendation's finding that her claim is time-barred (ECF No. 14 at 11-20); and, second, she objects to the finding that she has failed to plead sufficient facts to state a plausible claim for

relief. (Id. at 4-11.)  It does not appear that Ms. Clair has objected to any other findings of fact or law by the Chief Magistrate Judge.

## ANALYSIS

I.    Standard of Review

Where a *pro se* plaintiff has been granted leave to proceed *in forma pauperis*, the court is required to screen the complaint, and to dismiss any complaint, or portion therefore, if the action (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  A district court has the power to dismiss a complaint, *sua sponte*, for failure to state claim so long as the plaintiff is "afford[ed] . . . some opportunity to address the perceived shortcomings in the complaint."  Morrison v. Tomano, 755 F.2d 515, 517 (6th Cir. 1985) (citing Tingler v. Marshall, 716 F.2d 1109 (6th Cir. 1983)).

A magistrate judge may submit to a judge of the court proposed findings of fact and recommendations for dismissal of a complaint for failure to state a claim upon which relief can be granted.  28 U.S.C. § 636(b)(1)(B).  "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 149 (1985).  After reviewing the evidence, the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  The district court need not review findings that are not objected to under a *de novo* or any other standard.  Thomas, 474 U.S. at 150.  Accordingly, the Court will review Ms. Clair's two objections under a *de novo* standard, but otherwise **ADOPTS** the remaining portions of the Report and Recommendation, and thus **DISMISSES WITHOUT PREJUDICE** any claims brought by Ms. Clair on behalf of

the United States Department of Treasury, the United States Department of Housing and Urban Development and Money Management International.

When reviewing Ms. Clair's two objections, the Court applies the Federal Rule of Civil Procedure 12(b)(6) standard. Under that standard, a court must determine whether the plaintiff has stated a claim upon which relief may be granted, while "constru[ing] the complaint in the light most favorable to the plaintiff, accept[ing] its allegations as true, and draw[ing] all reasonable inferences in favor of the plaintiff." DirecTV, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). For the following reasons, the Court finds that Ms. Clair's civil RICO claims against all Defendants are time-barred by the applicable statute of limitations, and that, even if they were not, she fails to state a claim upon which relief could be granted. As to Ms. Clair's original Complaint, her civil RICO claims are **DISMISSED WITH PREJUDICE**.

II.     Statute of Limitations:

Ms. Clair objects to the Report and Recommendation's finding that her civil RICO claims were filed outside of the applicable statute of limitations. Under 18 U.S.C. § 1962(c), "[i]t shall be unlawful for any person . . . associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Section 1964(c) of RICO authorizes civil suits, stating that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . . ." 18 U.S.C.

1964(c).  A civil RICO claim has a four-year statute of limitations.  <u>Agency Holding Corp. v. Malley-Duff & Assoc., Inc.</u>, 483 U.S. 143, 156 (1987).

The statute of limitations for a civil RICO claim begins to run when the claimant knows, or should have discovered, that the claimant suffered an injury.  <u>Rotella v. Wood</u>, 528 U.S. 549, 555-56 (2000).  In <u>Rotella</u>, the Court recognized that the purpose of civil RICO is "not merely to compensate victims but to turn them into prosecutors, 'private attorneys general,' dedicated to eliminating racketeering activity."  <u>Id.</u> at 557 (citing <u>Klehr</u>, 521 U.S. at 187.)  The Court rejected the "injury and pattern discovery" accrual rule, where the statute of limitations "accrues only when the claimant discovers, or should discover, both an injury and a pattern of RICO activity."  <u>Id.</u> at 553.  The Court stated that "[a] RICO plaintiff's ability to investigate the cause of his injuries is no more impaired by his ignorance of the underlying RICO pattern than a malpractice plaintiff is thwarted by ignorance of the details of treating decisions or of prevailing standards of medical practice."  <u>Id.</u> at 556-57.  Thus, it is the responsibility of the party to investigate the source of their injury, and the party need not know there is criminal RICO activity for the statute of limitations to begin to accrue.  <u>Id.</u>  A plaintiff may not "use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period."  <u>Klehr v. A.O. Smith Corp.</u>, 521 U.S. 179, 190 (1997).  Ms. Clair filed her Complaint on April 20, 2016.  Therefore, the only relevant question here is whether Ms. Clair knew, or should have known, prior to April 20, 2012, that she suffered the alleged injuries.

Ms. Clair's first objection states that "[t]he statute of limitations period does not begin to run until all of the objectives of the conspirators' have been achieved."  (Objection 14, ECF No. 14.)  However, the law cited by Ms. Clair to support her position comes from criminal RICO

actions, and is not applicable here.[3]  Ms. Clair also alleges that the "FHA Fraud Scheme" did not culminate until August 20, 2012, a time within the statute of limitations period.  (Objection 12, ECF No. 14.)  To substantiate this, Ms. Clair attaches as an exhibit a FHA insured loan on the Property and the underlying Deed of Trust for a purchase of the Property, dated August 20, 2012, which is after she moved out of the Property on April 25, 2012.  (ECF No. 14-7.)

There are two fatal flaws with Ms. Clair's position: (1) she was aware that she was being evicted from the property well before her actual move-out date of April 25, 2012; and (2) the continuation of alleged predicate acts does not extend the statute of limitations deadline in civil RICO cases.  As an initial matter, she alleges that her injuries include the loss of her home, the equity invested in the Property, the loss of her ability to sell the Property and loss of material possessions, presumably left at the Property.  (Objection 4, ECF No. 14.)  Although there may be an even earlier date when she knew of these injuries, she at least knew on March 23, 2012, when she alleges that she was told in-person that she must leave her home due to eviction proceedings against her.  (Objection 7, ECF No. 14.)  On a date no later than March 28, 2012, prior to Ms. Clair leaving her home, she retained counsel to contact BANA, showing that she was aware of her injury prior to the date she physically left the home.  (Compl. ¶ 369, ECF No. 1-3; Objection Ex. 52, ECF No. 15-11.).  Then, on April 3, 2012, Ms. Clair received a written notice to vacate from the law firm Weiss, Spicer and Cash, indicating to her that the Property had been foreclosed on and that she was required to leave.  (Objection Ex. 51, ECF 15-11.)  Therefore, there is ample evidence from her own pleadings and other materials that Ms. Clair knew of the injury of the loss

---

[3] Although the statute of limitations under criminal RICO runs from "the most recent, predicate act," the Supreme Court decline to extend the "last predicate act" rule to civil RICO claims. Klehr, 521 U.S. at 187.  The Court determined that "the commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period."  Id. at 189.

of her home prior to April 20, 2012. As for the second flaw, the fact that some of the alleged predicate acts by Defendants may have occurred after April 20, 2012, does not impact the timeliness of Ms. Clair's civil RICO claims.

Because Ms. Clair was aware of her civil RICO injury more than four years prior to the date she filed this Complaint, her claims are time-barred by the four-year statute of limitations.

III.    Failure to State a Claim

Secondly, Ms. Clair objects to the finding in the Report and Recommendation that, even in the event her allegations in the original Complaint are not time-barred, she fails to state a claim upon which relief could be granted. Specifically, Ms. Clair objects to certain findings of fact by the Chief Magistrate Judge, rather than the Court's interpretation of the applicable law. The Chief Magistrate Judge found Ms. Clair's "lengthy and confusing" 227-page complaint "difficult to ascertain" given that "she frequently digresses into sweeping allegations about the 'Wall Street market,' the validity of MERS, and various fraud schemes perpetrated by the Fayette County Register of Deeds." (R&R 2, ECF No. 8.) The Chief Magistrate Judge found that Ms. Clair's complaint "comes close to failing to meet the pleading requirements of Federal Rule of Civil Procedure 8(a)(2)," but ultimately parsed through the complaint in order to consider whether each of the schemes Ms. Clair alleged stated a claim upon which relief could be granted. (Id. at 2, 4.) The Chief Magistrate Judge found that Ms. Clair alleged "no other purpose or injury" of the Defendants' criminal conspiracies other than to deprive Ms. Clair of her home. (Id. at 18.) Because Ms. Clair alleged only a single injury, the Chief Magistrate Judge found that "the complaint fails to sufficiently allege a pattern of racketeering activity" as required for a plausible RICO claim. (Id. at 17.)

Ms. Clair's objections to the Chief Magistrate Judge's findings include the following: that she submits evidence of at least thirty-two other residential homes as "pattern examples" of the same activity that led to the loss of her Property (Objection 4, ECF No. 14); that her allegations against MERS are not "sweeping" (Id. at 5); that she does not allege that the Fayette County Register of Deeds is a fraudulent actor (Id. at 6); that she was never given "notice" of an eviction because there was not a legal eviction (Id. at 7); an unclear objection to the description of the quitclaim deed from her ex-husband (Id.); that the "Property Flip-Equity Skimming Scheme" continued until September 4, 2012 (Id. at 8); that she does not assert a private right of action under HAMP (Id. at 9); that she did not get legal disclosure of her rejection for HAMP, nor did she receive notice of her rejection by February 10, 2012 (Id. at 10); that her previous state-court lawsuit was not a civil RICO claim (Id.); and, finally, that the Court misconstrued when the three separate law firms represented her throughout the relevant time period. (Id. at 11.) While some of Ms. Clair's objections provide factual clarity, they do not alter the Court's analysis as to whether she states a plausible claim for relief.[4]

To assert a civil RICO claim, a plaintiff must show: "1) there were two or more predicate offenses; 2) the existence of an enterprise engaged in or affecting interstate or foreign commerce; 3) a nexus between the pattern of racketeering activity and the enterprise; and 4) an injury to [his or her] business or property by reason of the above." Frank v. D'Ambrosi, 4 F.3d 1378, 1385 (6th Cir. 1993) (citing Beneficial Standard Life Ins. Co. v. Madariaga, 851 F.2d 271, 274 n.5 (9th Cir. 1988)).

---

[4] Based on the information provided in her objections, it does not appear that Ms. Clair's previous lawsuit was a civil RICO claim, nor was it adjudicated on the merits. Therefore, there is no issue of *res judicata* in this case, as contemplated as a possibility in the R&R.

To establish "a pattern of racketeering activity," a plaintiff must establish that there were at least two predicate acts of racketeering activity under 18 U.S.C. § 1341 that pose a threat of continued criminal activity.  Brown v. Cassens Transport Co., 546 F.3d 347, 352 (6th Cir. 2008).  A criminal enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.  18 U.S.C. § 1961(4).  Civil RICO claims alleging racketeering activity with a single objective and a single victim are not sufficient to establish a pattern of racketeering activity, as they do not sufficiently evidence long-term criminal conduct.  See, e.g., Moon v. Harrison Piping Supply, 465 F.3d 719, 725 (6th Cir. 2006); Vemco, Inc. v. Camardella, 23 F.3d 129, 135 (6th Cir. 1995) ("We cannot conclude that [Plaintiff's] alleged actions here, involving a single victim and a single scheme for a single purpose over seventeen months, constitute the type of 'long-term criminal conduct' Congress sought to prohibit with RICO."); Hossain v. Ocwen Loan Servicing, LLC, No. 3:14-cv-0002, 2015 WL 5243877, at *5 (M.D. Tenn. Sept. 8, 2015).

In the R&R, the Chief Magistrate Judge found that Ms. Clair "fails to sufficiently allege a pattern of racketeering activity."  (ECF No. 8 at 17.)  All of the predicate acts alleged, even if taken as true, were directed at Ms. Clair, and the only objective alleged by Ms. Clair is the deprivation of her home.  (Id. at 18)  Therefore, as the Chief Magistrate Judge found, "the purported racketeering activity does not bear the markings of long-term criminal conduct and the allegations are not sufficient to evidence a pattern of racketeering activity."  (Id.)  This Court agrees.  Even taking all of her allegations as true, Ms. Clair alleges that all thirty-four defendants conspired in six illegal schemes to deprive her, as the sole victim, of her Property.  She fails to establish in either her original 267-page Complaint, or in her objections and attached exhibits, a

plausible basis that there existed a pattern of racketeering acts when the sole alleged goal was depriving her of her Property.

**CONCLUSION**

For the foregoing reasons, the Court **ADOPTS** the Report and Recommendation. The Court finds that Ms. Clair's claims are time-barred by the applicable statute of limitations. The Court also finds that Ms. Clair has failed to state a claim upon which relief can be granted. Accordingly, Ms. Clair's civil RICO claims against all thirty-four defendants are **DISMISSED WITH PREJUDICE**, and the claims brought by Ms. Clair on behalf of the United States Department of Treasury, the United States Department of Housing and Urban Development and Money Management International are **DISMISSED WITHOUT PREJUDICE**. Because Ms. Clair has filed an amended complaint, the Magistrate Judge will review the amended complaint to determine if Ms. Clair has pled any new allegations that fall outside of this Order.

**IT IS SO ORDERED**, this 19th day of October, 2016.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE